UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X
MARTIN TRETOLA, MARBLES ENTERPRISES,
INC. d/b/a T&T GUNNERY,                             MEMORANDUM AND ORDER
                                                    08-CV-3225 (DRH)(WDW)

            Plaintiffs,

-against-

COUNTY OF NASSAU, POLICE OFFICER
FALTINGS,

            Defendants.
-------------------------------------X
A P P E A R A N C E S:

For Plaintiffs:
Friedman, Harfenist, Kraut
& Perlstein LLP
3000 Marcus Avenue
Suite 2E1
Lake Success, New York 11042
  By: Steven J. Harfenist, Esq.
      Charles H. Horn, Esq.

For Defendants:
Nassau County Attorney's Office
    Carnell Foskey
    County Attorney
One West Street
Mineola, New York 11501
  By: Joseph Nocella, Esq.
       Ralph J. Reissman, Esq.

**HURLEY, Senior District Judge:**

On February 19, 2014 this Court issued a decision denying Defendants' Rule 50(b) and 59 motions, but granting their motion for remittitur to the extent of reducing the jury's $2,000,000 award for lost profits to $760,605.00 and their $3,000,000 for punitive damages to $175,000.00. On February 24, 2014 Plaintiffs accepted the remittitur.

Plaintiff now requests prejudgment interest on the portion of the remitted award that constituted economic loss, specifically, $585,605.00. In opposition to this request, Defendants contend that prejudgment interest is not warranted in this case. Both parties have submitted letters stating their respective positions, and both parties have cited relevant case law to support their positions.

## *DISCUSSION*

As referenced by both parties, "in a suit to enforce a federal right, the question of whether to award prejudgment interest is ordinarily left to the discretion of the district court." *Sulkowska v. City of New York*, 170 F. Supp. 2d 359, 371 (S.D.N.Y. 2001); *see Augustin v. Jablonsky*, 819 F. Supp. 2d 153, 178 (E.D.N.Y. 2011) (finding that the district court had discretion as to whether or not to grant prejudgment interest in the context of a Section 1983 suit). When determining whether prejudgment interest is appropriate, the Court will consider "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Gierlinger v. Gleason*, 160 F.3d 858, 873 (2d Cir. 1998) (internal quotation marks and citations omitted). The certainty of the damages due to the plaintiff is another factor to be weighed in resolving prejudgment interest issues. *Wickham Contracting Co., Inc. v. Local Union No. 3, Int'l Bhd. of Elec. Workers, AFL-*

*CIO*, 955 F.2d 831, 835 (2d Cir. 1992). However, the speculative nature of the damages must be considered in light of the equities and circumstances of each particular case. *Id*.

Additionally, with respect to employment related cases, the Second Circuit has "consistently stated that to the extent … that the damages awarded to the plaintiff represent compensation for lost wages, it is ordinarily an abuse of discretion not to include pre-judgment interest." *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 54 (2d Cir. 2009) (internal quotation marks and citations omitted); *See also Mohan v. La Rue Distributors, Inc.*, 2008 WL 4822266, at *2 (E.D.N.Y Oct. 27, 2008) (finding that the Second Circuit has used the terms "lost wages" and "back pay" interchangeably when discussing the mandatory nature of prejudgment interest).

Plaintiff was self-employed at the time of the discrimination. Thus, in the technical sense it cannot be stated that Plaintiff is owed "back pay" because Defendants did not withhold salary that otherwise belonged to Plaintiff. Nor can it be stated that Plaintiff suffered "lost wages" because he was not being paid by an employer. However, Plaintiff testified that he lost $445,605 in profits because of Defendants' misconduct. This sum is attributable to lost hand gun sales and accessory sales during the fourteen month period that Plaintiff was prohibited from operating his business. In addition to the $445,605, Plaintiff testified that he suffered a loss in the amount of $140,000 which resulted from the distress sale of his "personal collection of long arms" made to "help keep the store open." Plaintiff's testimony regarding these figures was unchallenged at trial. Taken together, these two figures constitute Plaintiff's economic loss award of $585,605.

The Plaintiff's lost profits are "in effect his 'back pay' " which he lost due to Defendants' revocation of his license. *Turley v. New York City Police Dep't*, 988 F. Supp. 675, 682 (S.D.N.Y. 1997) rev'd on other grounds at 167 F.3d 757 (2d Cir. 1999). In such circumstances, a plaintiff

may legitimately seek to recover the loss he suffered as a result of not being able to use his lost profits. *Id*. Taking this view, and weighing the various considerations mentioned above, this Court is inclined to grant prejudgment interest with respect to Plaintiff's lost profits, totaling $445,605. However, this Court does not find it appropriate to grant prejudgment interest on the loss Plaintiff suffered in the amount of $140,000 as a result of the distress sale.

While Plaintiff's damages in the amount of $445,605 were a rough estimate of lost sales for the fourteenth month period, they were nevertheless based on sales figures from 2006. On the other hand, the damages in the amount of $140,000 were based solely on Plaintiff's assertion that he would have received significantly more for his "collection of long arms" had he not sold them at a distress sale. Although this testimony was unchallenged, Plaintiff did not proffer any documentation to substantiate the market value of any of the guns from his "collection of long arms." Thus, Plaintiff's loss in this regard is highly speculative; much more so than his loss with respect to the profits from his business.

Defendants constructively "withheld" profits that Plaintiff would have earned by improperly revoking his license to sell hand guns and other accessories. However, the same cannot be said with respect to the damages Plaintiff sustained as a result of the distress sale. Plaintiff conducted the distress sale voluntarily, and any nexus between Defendants' wrongdoing and Plaintiff's decision to conduct this sale is too tenuous to justify granting prejudgment interest. Therefore, taking into account the underlying purpose of prejudgment interest, the various considerations outlined above, and the highly speculative nature of the Plaintiff's damages, this Court concludes that an award of prejudgment interest on the $140,000 component of Plaintiff's economic damages is inappropriate.

Concerning the interest rate to be applied, Plaintiff suggests that the Court apply the current New York State Court post-judgment interest rate of 9%, or alternatively, the rate at which Nassau County borrowed money during the relevant period, allegedly 4-5%. Defendants contend that the applicable rate of interest should be the Treasury Bill rate of .0013.[1]

In determining what prejudgment interest rate should be applied, the Court is guided by the same considerations that informed the Court's decision whether or not to award interest at all. *Jones v. UNUM Life Ins. Co. of Am.*, 223 F.3d 130, 139 (2d Cir. 2000); *Mendez v. Teachers Insurance & Annuity Ass'n,* 982 F.2d 783, 790 (2d Cir.1992) (amount should be "fair, equitable and necessary to compensate the wronged party fully"). Again, those considerations are, "(i) the need to fully compensate the wronged party for actual damages suffered, (ii) considerations of fairness and the relative equities of the award, (iii) the remedial purpose of the statute involved, and/or (iv) such other general principles as are deemed relevant by the court." *Gierlinger*, 160 F.3d at 873.

The Second Circuit has stated that when a plaintiff's claim is "purely a product of a federal statute," the interest rate should be determined pursuant to federal law rather than borrowed from a state statute. *Endico Potatoes, Inc. v. CIT Grp./Factoring, Inc.*, 67 F.3d 1063, 1072 (2d Cir. 1995) (affirming the district court's decision not to use the 9% New York statutory rate because the claims in the case were exclusively federal). However, there is no federal statute that purports to control the rate of prejudgment interest. *Jones,* 223 F.3d at 139. Section 1961 of Title 28 establishes the rate of postjudgment interest that is to be paid "on any money

---

[1] Defendants claim that the Nassau County borrowing rate for the relevant period is actually 1.650%, not 4-5% as Plaintiff claims, and suggest that the Court apply that rate if it chooses not to apply the Treasury Bill rate.

judgment in a civil case recovered in a district court," linking that rate to the rate of interest the government pays on money it borrows by means of Treasury bills. *Id*.; *See* 28 U.S.C. § 1961.

Courts in this circuit "uniformly have applied" the federal interest rate in awarding prejudgment interest. *Rodriguez v. Express World Wide, LLC*, 2014 WL 1347369 (E.D.N.Y. Jan. 16, 2014), *report and recommendation adopted by* 2014 WL 1350350 (E.D.N.Y. Mar. 31, 2014). The rationale behind applying the federal rate is that since interest is intended to make the injured party whole, the interest "should be measured by interest on short-term, risk-free obligations." *N.Y. Marine & Gen Ins. Co. v. Tradeline* (L.L.C), 266 F.3d 112, 130-31 (2d Cir. 2001). In other words, the Treasury bill rate is the rate most commonly used because it "provides the plaintiff with an amount that could have been obtained on a relatively safe investment." *Nat'l Commc'ns Ass'n, Inc. v. Am. Tel. & Tel. Co.*, 1999 WL 258263 (S.D.N.Y. Apr. 29, 1999).

Plaintiff seeks to gain the "expected return on the use of his money." Applying the New York State rate is inconsistent with this objective. "The New York Legislature adopted the 9 percent rate in 1982, a period of high inflation that differed dramatically from our current interest rate environment." *Barrett v. Hartford Life & Acc. Ins. Co*., 2012 WL 6929143 (S.D.N.Y. Nov. 9, 2012). Indeed, had Plaintiff invested his $440,605 between 2007 and 2014 it is unlikely he would have received an interest rate anywhere remotely close to 9%. *See Algie v. RCA Global Commc'ns, Inc*., 891 F. Supp. 875, 899 (S.D.N.Y. 1994) *aff'd*, 60 F.3d 956 (2d Cir. 1995) (finding that the federal rate is more appropriate than the CPLR provision, because applying a rate of nine percent would overcompensate plaintiffs).

With respect to the suggested alternative, the rate at which Nassau County borrowed money during the relevant period, Plaintiff has not provided any documentation showing that

rate to be somewhere between 4% and 5%. Even if this Court were to accept Plaintiff's suggestion, applying a rate of 4-5% would overcompensate Plaintiff. *See Wickham*, 955 F.2d at 835 (arguing that prejudgment interest might be improper altogether where punitive damages have been awarded).

Admittedly, the current Treasury Bill rate of .0013 is rather low. However, the Plaintiff has already received $585,605 in economic damages, $175,000 in noneconomic damages, and $175,000 in punitive damages, for a total of $935,600. Given the circumstances, this Court does not find it appropriate to undertake a novel approach in determining what interest the Plaintiff *may* have received if he invested his money between 2007 and 2014. As a result, the Court awards plaintiff prejudgment interest at the rate of .0013 on his economic damages in the amount of $440,605.00. Additionally, "the interest should commence to run when the claim arose." *Algie*, 891 F. Supp. At 875; *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 151 (E.D.N.Y. 2013).

## *CONCLUSION*

For the reasons set forth above, the Court awards Plaintiff prejudgment interest on $440,605.00 at a rate of .0013. Plaintiff is directed to submit a proposed judgment within 30 days of this Order in accordance with this Order as well as the Court's prior Orders and its acceptance of the remittitur. (Docket Entries 93, 95, and 96.)

**SO ORDERED.**

Dated: Central Islip, New York
      June 24, 2014

_____/s/_____
Denis R. Hurley